IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

SIBONGISENI MFUNDO MSEZANE,

    Petitioner,

    v.

PATRICK GARTLAND,

    Respondent.

CIVIL ACTION NO.: 5:19-cv-51

FILED
Scott L. Poff, Clerk
United States District Court

*By casbell at 1:32 pm, Jan 29, 2020*

## ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Sibongiseni Msezane ("Msezane"), who is currently housed at the Folkston Immigration and Customs Enforcement ("ICE") Processing Center in Folkston, Georgia, filed a 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus, as supplemented. Docs. 1, 8. Respondent filed a Response/Motion to Dismiss, and Msezane filed a Response. Docs. 6, 9. Msezane also filed a Motion to Expedite his N-600 Application. Doc. 10. For the reasons which follow, I **RECOMMEND** the Court **GRANT in part** and **DENY in part** Respondent's Motion, **DENY as moot** Msezane's Motion to Expedite,[1] and **ORDER** Respondent to file an Answer to the Petition that complies with Rule 5 of the Rules Governing Section 2254 within 21 days of the adoption of my recommendation.

---

[1] Msezane's Motion to Expedite his N-600 Application is addressed to the United States Citizenship and Immigration Services' ("USCIS") Office of Administrative Appeals. Doc. 10 at 1. He states the filing "is a summary of what is going on today with immigration proceedings." Doc. 10-1 at 1. Moreover, it appears Msezane's N-600 Application has now been considered and rejected by USCIS. Doc. 6 at 7. Therefore, to the extent Msezane requests any relief in this filing, the request is now moot.

**BACKGROUND**

Respondent contends Msezane is a native and citizen of South Africa and is due to be removed from the United States. Doc. 6 at 3–4. Respondent also contends Msezane was admitted to the United States as a nonimmigrant under § 101(a)(15) of the Immigration and Nationality Act but remained in the United States for a time longer than permitted.

Msezane does not dispute he came to the United States on a non-immigrant visa, but he contends he is now a United States' citizen. Specifically, he asserts his mother became a naturalized citizen of the United States while he was still a minor and while he was residing in the United States, and, as a result, he obtained derivative United States citizenship.[2]  Doc. 1 at 6.

On May 10, 2018, Msezane was served with a notice to appear, charging that he was subject to removal from the United States, and was taken into ICE custody on the same day. Doc. 6-1. During his period of ICE custody, Msezane has appeared before an Immigration Judge several times and has sought and obtained various continuances in his immigration case. Doc. 6 at 4. In the course of his immigration case, Msezane has filed various documents and requests related to the citizenship determination, including filing a Certificate of Citizenship request form ("N-600") with United States Citizenship and Immigration Service ("USCIS") in an effort to obtain proof of his claim of derivative citizenship. Id. at 5–7. Most recently, in August 2019, Msezane appeared before the Immigration Judge, informed the judge that his N-600 had been denied and that he intended to appeal that decision, and requested another continuance of the

---

[2] Msezane represents he was born on November 26, 1984 and came to the United States in 1992. Doc. 1-1 at 1. It appears Msezane has remained in the United States since 1992. Msezane also represents his mother became a naturalized United States' citizen on May 19, 1996, when he was eleven years old. Id.

immigration case while he pursued the appeal.  Id. at 7; see also Doc. 6-1 at 19–20 (denial of N-600).

According to Respondent, the Immigration Judge presiding over Msezane's immigration case determined on June 26, 2018 that Msezane is not a United States citizen because he did not become a legal, permanent resident.[3]  Doc. 6 at 5; see also Doc. 6-1 at 11–14 (decision of the Immigration Judge).  The current status of Msezane's immigration case is unclear, but as of August 9, 2019 (the most recent date pertinent information was provided to the Court), the Immigration Judge had not entered any removal order in the case.  Respondent states that, even if a removal order is entered, Msezane will not be removed from the United States during the pendency of any appeal.  Doc. 6 at 7 (citing 8 C.F.R. §§1003.1(d)(7), 1003.6).  Thus, as of August 9, 2019, Msezane's immigration case was not concluded, and he was not facing immediate removal.

Regarding his ICE detention, Msezane has remained in ICE custody since he was first taken into custody on May 10, 2018.  Respondent alleges the Immigration Judge concluded, after a master hearing on June 21, 2018, that Msezane was subject to mandatory detention under 8 U.S.C. § 1226(c) based on previous criminal convictions.[4]  Doc. 6 at 5.  Specifically, Respondent

---

[3]   Respondent asserts Msezane admitted the charges of removability and conceded the grounds for removal in the June 5, 2018 master hearing.  Id. at 5.  But it also appears Msezane later disputed the charges and maintains he has derivative citizenship, by way of his mother's naturalization.  The Court need not resolve whether Msezane has admitted the charges or the grounds for removal in order to resolve Respondent's Motion to Dismiss.

[4]   Respondent relies on the declaration of Thomas B. Decker (Supervisory Detention and Deportation Officer with the U.S. Department of Homeland Security) as support for the conclusion that the Immigration Judge made this "mandatory detention" determination following the June 21, 2018 master hearing.  Neither party has submitted any written record (e.g., any order or ruling) memorializing this determination.  Msezane submitted an initial "Notice of Custody Determination," dated May 10, 2018, in which "Hampton, W 4176" informed Msezane he was being detained, but the document does not provide the basis for the detention.  Doc. 1-1 at 60.  In that document, Msezane requests that an immigration judge review the custody determination.  Id.  However, there are no documents related to

3

contends Msezane was convicted in Baldwin County, Georgia, in 2010 and 2011 for crimes involving moral turpitude (passing fictitious checks, possession of cocaine, driving under the influence, driving with a suspended license, and passing bad checks).  Id. at 3–4.  Respondent contends Msezane has not filed a motion for bond in the immigration case, and the Immigration Judge has not ruled on any request for bond.  Id. at 8.

In his Petition, Msezane explains the merits of his position in the immigration case, challenges his continued detention, and asks to be released from ICE's custody on his own recognizance.  Doc. 1 at 7.  Respondent moves to dismiss Msezane's Petition, arguing this Court lacks jurisdiction to review the decision to detain Msezane.  Doc. 6 at 1.  Additionally, Respondent asserts Msezane is limited to bringing his claim of derivative citizenship in the immigration case, which he has done and which is ongoing.  Id.  Further, Respondent alleges this Court should not entertain Msezane's citizenship claims, as he has not exhausted his administrative remedies.  Id. at 14.

## DISCUSSION

### I.  Msezane's Derivative Citizenship Claim

Msezane indicates he wants this Court to review the Immigration Judge's conclusion regarding his derivative citizenship.[5]  Doc. 1 at 6 ("I am a derivative U.S. citizen from my mother."); Doc. 1-1 at 8 (October 16, 2018 letter to Judge Scott Criss asking for "a little more

---

review or the ultimate determination by the Immigration Judge.  The absence of written records concerning the detention determination is immaterial, as Msezane does not dispute the Immigration Judge determined he is subject to mandatory detention under § 1226(c).  See generally Doc. 9.

[5]  Msezane is somewhat inconsistent on whether he is actually seeking judicial review of the Immigration Judge's decision.  See Doc. 9 at 5 ("I am not asking for review of immigration proceedings as SDDO Decker is implying with his statements to court.  I am challenging prolonged detention by Department of Homeland and I.C.E. and review of fact finding in citizenship matter.  This is what I am asking court to address." [sic]).  The Court construes Msezane's pro se Petition liberally and considers Msezane as requesting review of the Immigration Judge's citizenship determination.

4

review into my case on grounds that I may have acquired derivative citizenship from my mother."); Doc. 8 (August 16, 2019 filing with this Court, including various applications submitted to the INS over more than 20 years' time and thanking the Court for its review of his case); Doc. 9 at 5 (noting he has submitted facts and opinions "that support my assertions of United States citizenship."). Respondent contends the Court should avoid interference with Msezane's removal proceedings and citizenship claim, which are intertwined, because Msezane has not exhausted his available remedies. Doc. 6 at 10, 14.

"Where an official's authority to act depends upon the status of the person affected, in this case eligibility for citizenship, that status, when in dispute, may be determined by a declaratory judgment proceeding after the exhaustion of administrative remedies." McGrath v. Kristensen, 340 U.S. 162, 169 (1950) (cited in Roberts v. INS, 372 F. App'x 921, 925 (11th Cir. 2010)). In McGrath, the United States Supreme Court concluded the petitioner could bring a 28 U.S.C. § 2201 declaratory judgment action to determine citizenship status because the Attorney General's refusal to suspend deportation was a final administrative decision. However, in Roberts, the Court determined the petitioner could not bring a declaratory judgment action because the petitioner's immigration proceedings had not yet begun.

To the extent Msezane seeks to have this Court resolve whether he is entitled to derivative citizenship, he cannot do so at this time. The Court is mindful that inmates can bring derivative citizenship claims under certain conditions. See Sundar v. INS, 328 F.3d 1320, 1323 (11th Cir. 2003). In one instance, an inmate may start by filing an application for certificate of citizenship with DHS. 8 C.F.R. § 341.1. If this application is denied, the inmate may file an appeal with the Administrative Appeals Unit ("AAU"). 8 C.F.R. §§ 322.5(b), 103.3(a). If the AAU denies the appeal, then the applicant may be able to file an action in district court seeking

5

declaratory judgment on his derivative citizenship claim.  8 U.S.C. § 1503(a); Ortega v. Holder, 592 F.3d 738, 744 (7th Cir. 2010) (noting that an individual can establish nationality pursuant to § 1503 once an administrative application for a certificate of citizenship has been denied); Nelson v. United States, 107 F. App'x 469, 470–71 (6th Cir. 2004) (stating that § 1503(a) requires a final administrative denial before a declaratory judgment action may be instituted).

Judicial review of a derivative citizenship claim is also appropriate occurs "[w]here an individual is subject to removal proceedings, and a claim of derivative citizenship has been denied" as part of such proceedings.  Henriquez v. Ashcroft, 269 F. Supp. 2d 106, 108 (E.D.N.Y. 2003).  In this circumstance, review is properly sought "before the appropriate court of appeals, not a district court."  Id. (citing 8 U.S.C. § 1252(b)(5)).  Moreover, regardless of whether a claim of derivative citizenship is made following an application for a certificate of citizenship or in conjunction with removal proceedings, all available administrative remedies must be exhausted before a federal court has subject matter jurisdiction to review the claim.  8 U.S.C. §§ 1503(a) & 1252(b)–(d); Sundar, 328 F.3d at 1323–24 (noting that the exhaustion requirement is jurisdictional and applies equally to habeas corpus proceedings).

Msezane has not shown he exhausted the proper administrative remedies before filing this cause of action.  In addition, Msezane has not shown that his citizenship application or removal proceedings have reached finality.  Docs. 10, 10-1 (filed Oct. 7, 2019 and showing his citizenship claims have not been decided).  Therefore, this Court is without jurisdiction to entertain Msezane's derivative citizenship claims.  The Court should **GRANT** this portion of Respondent's Motion and **DISMISS without prejudice** this portion of Msezane's Petition.

## II.     Msezane's Request for Release from § 1226 Detention

In his Petition, Msezane asks this Court to order that he be released on his own recognizance pending resolution of his immigration case. The specific basis for Msezane's request is somewhat unclear but appears to turn on his view that he has a meritorious claim to derivative citizenship, and, therefore, should no longer be held in ICE's custody. See Doc. 1 at 7 ("I would like for the Court to review why I am still in detention when I have given case law that support my case and the DHS have none to cite. I should not be in jail while I await decision of N-600."). Additionally, Msezane challenges the length of his detention, arguing that the length of his detention violates his due process rights and that any detention related to immigration proceedings exceeding six months is unreasonable. Doc. 9 at 4–5 (relying on Zadvydas v. Davis, 533 U.S. 678 (2001)).[6]

Respondent moves to dismiss this portion of Msezane's Petition, arguing that Msezane is required to be detained under § 1226(c) during the pendency of his removal proceedings based on his criminal history. Doc. 6 at 9. Additionally, Respondent argues that, even if Msezane were subject only to discretionary detention under § 1226(a), the Immigration Judge's decision to detain Msezane cannot be reviewed via § 2241 in this Court. Id.

Section 236(c) of the Immigration and Nationality Act, 8 U.S.C. § 1226, governs detention of certain aliens during removal proceedings. Jennings v. Rodriguez, 138 S. Ct. 830, 837 (2018). Relevant to this case, § 1226(a) sets out the default rule, which permits, but does not require, the Attorney General to detain an individual while removal proceedings are ongoing. Id. Section 1226(c), however, "carves out a statutory category of aliens who may *not* be released

---

[6]     Zadvydas dealt with the post-removal-period detention statute, 8 U.S.C. § 1231, and is not applicable to this case which concerns detention under § 1226, the statute dealing with the period "preceding the entry of final removal order[.]" 533 U.S. at 688.

7

under § 1226(a)." Id. (emphasis in original). Specifically, § 1226(c) provides the Attorney General "shall take into custody any alien who—is deportable by reason of having committed any offense" involving moral turpitude, as defined in 8 U.S.C. § 1227(a)(2)(A)(ii). Thus, § 1226(a) provides for discretionary detention for aliens until removal proceedings are complete (as long as certain conditions are met), but § 1226(c) eliminates that discretion and imposes mandatory detention for certain aliens, in particular aliens who committed offenses involving moral turpitude.[7] Section 1226(c) does not on its face set a time limit on the length of detention, but, instead, requires that aliens be held until a final removal decision has been made.

> In fact, by allowing aliens to be released "only if" the Attorney General decides that certain conditions are met, § 1226(c) reinforces the conclusion that aliens detained under its authority are not entitled to be released under any circumstances other than those expressly recognized by the statute. And together with § 1226(a), § 1226(c) makes clear that detention of aliens within its scope must continue "pending a decision on whether the alien is to be removed from the United States."

Jennings, 138 S. Ct. at 846 (quoting § 1226(a)).

In terms of this Court's ability to review an immigration judge's detention decision, Congress has significantly curtailed the ability of detainees to seek judicial review of detention determinations under § 1226(a) and § 1226(c). As to discretionary detention under § 1226(a):

> The Attorney General's discretionary judgment regarding the application of [§ 1226] shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

8 U.S.C. § 1226(e). In other words, "§ 1226(e) precludes an alien from 'challeng[ing] a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has

---

[7] Section 1226(c)(2) provides for a narrow exception to mandatory detention for witness-protection purposes, but there is no indication the (c)(2) exception applies in Msezane's case.

made regarding his detention or release'" in a habeas proceeding.[8] Jennings, 138 S. Ct. at 841 (2018) (quoting Demore v. Kim, 538 U.S. 510, 516 (2003)). Similarly, by statute, review of all questions of law and fact "arising from any action taken or proceeding brought to remove an alien from the United States under [Title 8, Chapter 12, Subchapter II of the United States Code] shall only be available in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9). The Supreme Court has indicated that these limitations will prevent challenges to actual discretionary decisions to detain an alien or to seek removal of the alien or to any discretionary judgment, action, or decision, but will not prevent challenges to the "statutory framework" that permits detention. Jennings, 138 S. Ct. at 839–41.

The record in this case demonstrates the Immigration Judge determined Msezane was subject to mandatory detention under § 1226(c) due to his prior convictions.[9] Msezane, for his part, does not dispute he is subject to mandatory detention under § 1226(c) and does not argue any mistake of law or fact was made in determining that he should be detained or that any request for a bond hearing was improperly denied. Rather, Msezane asserts he has a valid claim to citizenship and that his detention has endured longer than is constitutionally permissible.

---

[8] This is not to say that there is no review of detention determinations, only that judicial review is limited. Importantly, in cases where an alien is detained under § 1226(a), he can seek review of that detention with the Department of Homeland Security ("DHS") and then by an immigration judge and can "secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." Nielsen v. Preap, 139 S. Ct. 954, 960 (2019) (citing 8 C.F.R. §§ 236.1(c)(8), (d)(1), 1003.19(a), 1236.1(d), and then citing Matter of Guerra, 24 I. & N. Dec. 37 (BIA 2006))).

[9] Respondent states in his Motion that "Petitioner has been detained during these removal proceedings pursuant to 8 U.S.C. § 1226(a), and the immigration judge has notified Petitioner that he is subject to mandatory detention under § 1226(c)." Doc. 6 at 8. However, Respondent offers no support for the conclusion that Msezane has been detained under § 1226(a). And the only evidence of record demonstrates that Msezane has been detained at all times under § 1226(c). See Doc. 6-1 at 2, ¶ 7. There is nothing in the record to suggest that any immigration judge conducted a bond hearing under § 1226(a) or made the requisite findings under that provision. Accordingly, for the purposes of this Report, the Court assumes Msezane has been detained at all times under § 1226(c).

The fact that Msezane contends he has a valid claim to United States' citizenship does not provide an independent basis for demanding bond. Indeed, § 1226 expressly contemplates disputed claims to citizenship. Allowing an alien to avoid detention while removal proceedings are ongoing based only on a claim of citizenship would render the entire statutory framework meaningless. Additionally, to the extent Msezane asserts a facial due process challenge based on the length of his detention (i.e., a challenge to the statutory framework permitting his detention in this case), that challenge fails as a matter of law, as the Supreme Court has explicitly rejected any facial constitutional challenge based the duration or indefiniteness of detention under § 1226(a) and § 1226(c). Jennings, 138 S. Ct. at 842–52. Furthermore, to the extent Msezane seeks to challenge any discretionary decision by an immigration judge related to his detention, he cannot do so here or at this time, given the limits of §§ 1226(e) and 1252(b)(9). Id.

However, Msezane also challenges the length of detention as violative of his right to procedural due process. Respondent does not address the merits of this challenge. Rather, Respondent argues that Msezane must be detained under § 1226(c) because of his criminal history and discretionary decisions by immigration judges are largely unreviewable in proceedings such as these. Doc. 6 at 9. Neither of the arguments Respondent advances resolves the issue, and, as explained below, Respondent has not demonstrated that this portion of Msezane's should be dismissed at this time.

It is well established that aliens present in the United States are entitled to Fifth Amendment due process protections in deportation proceedings. Reno v. Flores, 507 U.S. 292, 306 (1993). The Supreme Court has also recognized, however, that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." Demore v. Kim, 538 U.S. 510, 523 (2003). By statute, any alien who is inadmissible or deportable by

10

reason of having committed certain enumerated criminal offenses after the alien has been released from criminal incarceration must be taken into and held in custody. § 1226(c). In Demore, the United States Supreme Court held that § 1226(c) does not—on its face—violate the due process rights of criminal aliens who are detained for the limited period of their removal proceedings. 538 U.S. at 513. However, the Court left open the possibility of as-applied procedural due process challenges to § 1226(c) detention, where continued detention becomes unreasonable or unjustified. Id. at 531–33 (Kennedy, J., concurring).

In the years since Demore, many courts construed § 1226(c) as authorizing detention only for a "reasonable" amount time, so as to avoid resolving the constitutional challenges presented by extended § 1226(c) detention. See Sopo v. U.S. Attorney General ("Sopo I"), 825 F.3d 1199, 1213–14 (11th Cir. 2016) (collecting cases and adopting similar construction of § 1226(c)), *vacated on other grounds*, 890 F.3d 952 (11th Cir. 2018). However, in Jennings, the Supreme Court rejected this construction of § 1226(c), recognizing that the statute requires mandatory detention of certain aliens until the conclusion of their removal proceedings, and that the provision cannot be construed to impose a "reasonableness" limitation. 138 S. Ct. at 841. But, again, the Court left open the possibility of as-applied procedural due process challenges to § 1226(c) detention, particularly where the petitioner alleges the detention has become unreasonably prolonged.

To determine if a procedural due process violation has occurred, courts must determine whether a petitioner was deprived of a protected interest, and, if so, whether constitutionally adequate due process was afforded. See Logan v. Zimmerman Brush Co., 455 U.S. 422, (1982); Bank of Jackson Cty. v. Cherry, 980 F.2d 1362, 1366 (11th Cir. 1993). As for others protected by the Due Process Clause, for aliens involved in removal proceedings, "[f]reedom from

11

imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Zadvydas, 533 U.S. at 690.  Msezane has plainly established a deprivation of his freedom from imprisonment.  Therefore, to resolve Msezane's Petition, the Court must determine whether he was afforded constitutionally adequate due process.

As noted above, § 1226(c) has been held to be facially constitutional, see generally Demore, and courts have deemed detention under that provision constitutional so long as the detention is justified and not unreasonably prolonged.  Msezane does not dispute that he was validly subject to § 1226(c) detention based on his criminal history, but he does contend the detention—lasting more than 20 months—has been unreasonably prolonged.  Recently, courts in the Eleventh Circuit confronted with procedural due process challenges to prolonged detention under § 1226(c) have looked to Sopo I for guidance on evaluating the challenges.  See Lukaj v. McAleenan, Case No. 3:19-cv-241, 2019 WL 4979745, at *6 (M.D. Fla. Oct. 8, 2019), *vacated on other grounds*, 2020 WL 248724 (M.D. Fla. Jan. 16, 2020); Moore v. Nielsen, No. 418CV01722, 2019 WL 2152582, at *10 (N.D. Ala. May 3, 2019).  Those courts recognize that the reasoning of Sopo I concerning statutory construction § 1226(c) and the constitutional avoidance doctrine was rejected by the Supreme Court in Jennings and that the opinion in Sopo I was later vacated by the Eleventh Circuit.  However, those courts also recognize the analysis in Sopo I concerning prolonged § 1226(c) detention remains persuasive and is particularly instructive when assessing the constitutionality of prolonged § 1226(c) detention.  Lukaj, 2019 WL 4979745, at *6 (recognizing that, while "vacated opinions are void and have no legal effect[,]" "they can still have persuasive value"); Moore, 2019 WL 2152582, at *10 ("In assessing the constitutional avoidance doctrine, the Eleventh Circuit affirmatively answered the

due process question in [Sopo I]."). The undersigned agrees. In applying the constitutional avoidance doctrine in Sopo I, the Eleventh Circuit construed § 1226(c) to include a limit that avoided unconstitutional application of the statute. Therefore, the same analysis is highly instructive as to determining if prolonged detention under § 1226(c) does, in fact, violate a petitioner's right to procedural due process.

In Sopo I, the Eleventh Circuit explained that it is appropriate to use a case-by-case approach to determine whether an alien's detention under § 1226 is reasonable (as opposed to adopting any sort of bright line rule concerning the length of the petitioner's detention). Sopo I, 825 F.3d at 1215. In conducting the case-by-case evaluation, a court should consider, among other things: (1) the amount of time the alien has been in detention without a bond hearing; (2) the cause of the protracted removal proceedings (i.e., whether the petitioner or the government has improperly delayed the proceedings); (3) whether it will be possible to remove the alien upon the issuance of a final order of removal; (4) whether the period of civil immigration detention exceeds the time the alien spent in prison for the crime that rendered the alien removable; (5) whether the facility at which the alien is civilly detained is meaningfully different from a penal institution; and (6) the likelihood that the removal proceedings will conclude in the near future. Id. at 1217–18. Regarding the first factor—the length of detention—the Eleventh Circuit noted that § 1226(c) detention without a bond hearing is likely reasonable for up to six months but "may often become unreasonable by the one year mark, depending on the facts of the case." Id. at 1218. Critically, the Eleventh Circuit explained in the context of prolonged § 1226(c) detention, procedural due process does not require automatic release of a criminal alien once the detention is unreasonably prolonged but, instead, requires the government to afford the alien an individualized bond inquiry. Id.

Here, the record is not sufficiently developed for the Court to resolve whether Msezane's detention violates his right to procedural due process. While Respondent has moved for dismissal of Msezane's Petition, it has not provided sufficient information related to the Sopo I factors (described above), such that the Court can resolve the claim.[10] Indeed, the record is silent on most of the Sopo I factors.

Moreover, the limited information before the Court cuts in Msezane's favor or is neutral. For example, Msezane has been detained since he was taken into ICE's custody on May 9, 2018—more than 20 months, as of the date of this Report. Doc. 1 at 2; Doc. 6 at 4. As noted above, § 1226(c) detention without a bond hearing for more than six months may be unreasonable and likely becomes more so with each passing month. Regarding the reasons for any delays in the removal proceedings, Respondent has not pointed to any improper or bad faith conduct by Msezane.[11] It also appears from the record that Msezane was only sentenced to probation for the charges giving rise to his § 1226(c) detention but has been held in ICE detention for more than 20 months. While these limited facts support Msezane's request for an individualize bond hearing, the record is not sufficiently developed for the Court to rule on the request, and, at this point, certainly does not support Respondent's request for dismissal of this

---

[10] It is important to note Respondent is continuing to detain Msezane and is much more likely to be in possession of materials and information related to Msezane's ongoing detention.

[11] Respondent argues that Msezane "has not requested a bond through the filing of a motion." Doc. 6 at 2, 8. This argument is unavailing and does not impact any of the Sopo I factors. The regulation Respondent suggests Msezane should have invoked to seek a bond hearing—8 C.F.R. § 1003.19(e)—requires the detainee to demonstrate a material change in circumstances since the prior bond determination. It does not appear there was any initial bond determination from which the circumstances could change. Moreover, a detainee who is entitled to an individualized bond hearing as a matter of procedural due process is not required to demonstrate a change in circumstances; rather, where required, an individualized bond hearing should be conducted in accordance with 8 C.F.R. § 1236.1. See Sopo I, 825 F.3d at 1219–20.

portion of Msezane's Petition.  Accordingly, the Court should **DENY** this portion of Respondent's Motion to Dismiss.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **GRANT in part** and **DENY in part** Respondent's Motion, **DENY as moot** Msezane's Motion to Expedite, and **ORDER** Respondent to file an Answer to the Petition that complies with Rule 5 of the Rules Governing Section 2254 within 21 days of the adoption of my recommendation.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **14 days** of the date on which this Report and Recommendation is entered.  Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included.  Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.  The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final

judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon Msezane and Respondent.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 29th day of January, 2020.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA